UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
EDGAR BARBOSA, *et al.*,

                Plaintiff,

          -against-

PHOENIX SUTTON STR. INC., *et al.*,

                Defendants.
-------------------------------------------------------------------x

**MEMORANDUM & ORDER**
1:22-CV-0666 (OEM) (ARL)

**ORELIA E. MERCHANT, United States District Judge:**

      Plaintiffs Edgar Barbosa, Washington Najera, Luis Lemache, Javier Bueno Marca, Jaime Cordova, Raul Torres, Victor Abad, Oscar Amaya, Juan Lopez, Brayan Alexander Duran Perez, Diego Fernando Cardona Perez, Duran Jeison Perez Javier, Francisco Javier Reyes Rodriguez, Luis Florencio Deleg Yunga, Mario James Barbosa Perez, and Nelson Omar Echeverria Lopez (together, "Plaintiffs") bring this action individually and purportedly on behalf of all others similarly situated to them against Phoenix Sutton Str. Inc., Michal Siwiec, Peter Siwiec, and Stanislaw Gonczowski's (together, "Defendants") to recoup allegedly unpaid overtime wages. Before the Court is Defendants' partial motion to dismiss all of Plaintiffs' claims arising under New York Labor ("NYLL") § 195(1) and 195(3) for lack of standing under the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413, 422 (2021). This specific issue has been addressed many times in this district and several times by this Court. For the reasons that follow, the Court grants Defendants' partial motion to dismiss. Accordingly, Plaintiffs' Third and Fourth Causes of Action ("Wage Notice and Wage Statement Claims"), *see* Second Amended Complaint ("SAC"), ECF 29 ¶¶ 229-34, are dismissed for a lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1) ("Rule 12(b)(1)").

# BACKGROUND[1]

This is a wage-and-hour labor dispute brought under the Fair Labor Standards Act ("FLSA") and NYLL §§ 2, 651 where Plaintiffs seek repayment on alleged unpaid overtime wages. *See* SAC ¶¶ 218-28. Plaintiffs initiated this putative class action on February 2, 2022, and subsequently amended their complaint twice, first on December 13, 2022, *see* ECF 16, and then again on August 28, 2023. *See* SAC. Plaintiffs were employed by Defendants as construction workers, scaffolders, and laborers on construction sites. SAC ¶¶ 8-24, 54-199. At issue here are Plaintiffs' additional claims alleging violations of NYLL § 195(1), which requires employers to give employees written notice of certain wage information, SAC ¶¶ 229-31 (the "Wage Notice Claims"), as well as violations of NYLL § 195(3) for failing to provide Plaintiffs with wage statements upon each payment of wages, SAC ¶¶ 232-34 (the "Wage Statement Claims").

On December 11, 2023, the parties filed their respective papers on Defendants' partial motion to dismiss Plaintiffs' Wage Notice Claims and Wage Statement Claims. Defendants filed a memorandum of law, ECF 40 ("Def's Memo"), and a reply, ECF 42 ("Reply"). Plaintiffs filed an opposition, ECF 41 ("Pl's Opp."). Defendants claim that Plaintiffs have not established standing for the Wage Notice Claims and Wage Statement Claims under standard articulated in *TransUnion*. *See* Def's Memo at 1-3. Plaintiffs dispute this. *See generally* Pl's Opp.

## LEGAL STANDARD

A motion to dismiss for lack of standing is construed as a motion to dismiss under Rule 12(b)(1). *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016)). At the pleading stage, "the task of the district court is to determine whether the pleading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* at 56 (cleaned up).

---

[1] The following facts are taken from the second amended complaint and are accepted as true in resolving this motion.

And while the Court must take all facts alleged in the plaintiff's complaint as true and draw all reasonable inferences from the complaint, it is nonetheless the plaintiff's burden to establish standing under Article III of the Constitution. *Id.* at 56-57 (distinguishing between facial and fact-based standing challenges). To establish standing, a plaintiff must allege that it has (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *See Id.* at 55 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559–60 (1992)).

## DISCUSSION

Under New York's Wage Theft Prevention Act ("WTPA") "an employer must provide to each employee a wage notice that includes such information as the rate and times of pay and any allowances or benefits." *Liang v. USA QR Culture Indus. Dev. LLC,* No. 22-cv-4841(PGG)(RWL), 2023 WL 8252962, at *6 (S.D.N.Y. Nov. 29, 2023) (citing NYLL § 195(1)(a)). The WTPA "also requires that along with each payment of wages, employers provide employees wage statements that include, among other information, the rates of pay and dates of work covered by that wage payment." *Id.* (citing NYLL § 195(3)). "'The employer has the burden of proving compliance with' wage notice requirements." *Grande v. 48 Rockefeller Corp.*, No. 21-CV-1593(PGG)(JLC), 2023 WL 5162418, at *15 (S.D.N.Y. Aug. 11, 2023) (quoting 12 N.Y.C.R.R. § 146-2.2(d)).

In *TransUnion*, a class action brought under the Fair Credit Reporting Act, the Supreme Court reiterated that "Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion,* 594 U.S. at 426 (quoting *Spokeo, Inc.* v. *Robins*, 578 U. S. 330, 341 (2016)) (internal quotation marks omitted). That is, even demonstrating a *per se* a statutory violation is not enough for a plaintiff to have standing to bring suit because "an injury in law is not

3

an injury-in-fact." *Id.* at 237. Any such legal violation must be accompanied by a concrete and real harm visited upon the plaintiff. *See id.* Prototypically, such cognizable injuries include "physical or monetary injury" or any other "harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* at 425-26. "In sum, *TransUnion* established that in suits for damages plaintiffs cannot establish Article III standing by relying entirely on a statutory violation or risk of future harm: 'No concrete harm; no standing.'" *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 (2d Cir. 2021) (quoting *TransUnion*, 594 U.S. at 442).

"In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No. 19-CV-7654 (VEC), 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023); *accord Cui v. D Prime, Inc.,* No. 20-CV-03667 (OEM)(MMH), 2023 WL 8283717, at *1 (E.D.N.Y. Nov. 30, 2023). Put another way, so-called "technical" violations of NYLL's wage notice and wage statement provisions, standing alone, cannot provide a plaintiff with a sufficiently concrete injury-in-fact to endow the plaintiff with Article III standing. *See Francisco v. NY Tex Care, Inc.,* No. 19-CV-1649 (PKC)(ST), 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022).

On the other hand, "allegations" that go "beyond asserting a bare statutory violation and sufficiently allege a concrete harm" resulting from "the underpayment of wages" may pass muster. *Mateer v. Peloton Interactive, Inc.*, No. 22-CV-740 (LGS), 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022).

Here, Plaintiffs contend that they "have been concretely harmed by Defendants' statutory violations" yet fail to point to a cognizable concrete harm stemming from these technical violations in the SAC. Pl's Opp. at 10. Instead, each plaintiff only alleges that he

4

> suffered an actual and concrete harm, resulting from Plaintiff's inability to identify Plaintiff's employer to remedy his compensation problems, lack of knowledge about the rates of pay he was receiving and/or should have receiving for his regular hours and overtime hours, terms, and conditions of his pay, and furthermore, an inability to identify his hourly rate of pay to ascertain whether he was being properly paid in compliance with the FLSA – which they were not. Furthermore, Defendants' alleged willful failures to provide Plaintiffs with these documents prevented Plaintiffs from being able to calculate their hours worked, and proper rates of pay, and determine if they were being paid time-and-a-half for his overtime hours as required by the FLSA and NYLL[.]

SAC ¶ 62 (Barbosa), ¶ 71 (Najera), ¶ 80 (Lemache), ¶ 91 (Marca), ¶ 100 (Cordova), ¶ 109 (Torres), ¶ 118 (Abad), ¶ 127 (Amaya),  ¶ 136 (Lopez), ¶ 145 (Duran Perez), ¶ 154 (Cardona Perez), ¶ 163 (Perez Javier), ¶ 172 (Reyes Rodriguez), ¶ (Deleg Yunga), ¶ (Barbosa Perez), ¶ 199 (Echeverria Lopez),  ¶ 204 (class action allegation).

Such allegations fail for two reasons.  First, that statement that plaintiffs "suffered an actual and concrete harm" is an impermissible legal conclusion, not a factual allegation.  "[T]he law is clear that mere 'labels and conclusions,'" such as those above, are insufficient to survive a motion to dismiss.  *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)); *Cf. Chen*, 2023 WL 2388728, at *8 ("Vague allegations that Defendants' violations facilitated their other unlawful conduct do not give rise to a cognizable downstream consequence.") (collecting cases).

Second, the harms alleged in the SAC are informational harms. *See, e.g.*, SAC ¶ 204 (tying harms produced by WTPA violations repeatedly as "inability to identify" relevant compensation information).  Such informational harms cannot themselves suffice the injury-in-fact prong without the production of more facts establishing that the lack of information facilitated or caused a cognizable concrete Article III harm, such as an economic harm because  these informational injuries are not tied to "allege[d] 'downstream consequences from failing to receive the required

5

information'" which is required "to have an Article III injury-in-fact."[2] *Harty*, 28 F.4th at 444 (quoting *TransUnion*, 594 U.S. at 442). "In other words, a plaintiff must show that he has an interest in using the information beyond bringing his lawsuit." *Id.* (cleaned up). And, even construing the SAC in the light most favorable to the Plaintiffs, and assuming Plaintiffs allege that defendants alleged violations of the WTPA prevented them from having certain knowledge about their terms and conditions of payment and this in turn prevented them from understand that they were being shorted overtime hours and caused economic harm, this Court has rejected such arguments premised on "Plaintiffs' vague allegations that Defendants' violations facilitated their other unlawful conduct do not give rise to a cognizable downstream consequence." *Cui*, 2023 WL 8283717, at *1. In sum, without establishing facts showing a concrete downstream harm from the alleged WTPA violations Plaintiffs fail to establish the essential element of injury-in-fact required to have standing to bring those claims. Therefore, the Wage Notice and Wage Statements claims fail and must be dismissed without prejudice as the Court has no jurisdiction to hear them.

## CONCLUSION

For the reasons stated above, Defendants' partial motion to dismiss the Wage Notice and Wage Statement claims is **GRANTED** and these claims are **DISMISSED** from this action.

Dated: Brooklyn, New York  /s/Orelia E. Merchant
     April 26, 2024  ORELIA E. MERCHANT
                                                             United States District Judge

---

[2] While in *Harty* the issue of standing arose in the context of an ADA claim brought by a purportedly blind "tester," the principle remains the same: Plaintiffs injury is premised on argument that Defendants "deprived [Plaintiffs] of the information required to make meaningful choices[.]" *Harty*, 28 F.4th at 444.